Thank you. Good morning, Your Honors. My name is Michael Donahoe. I work for the Federal Defenders of Montana. I'm here on behalf of Mr. Robertson. As many of us do, I read a lot, even in my spare time. And I just read that F. Scott Fitzgerald said, you don't write because you want to say something, you write because you have something to say. And I think that's apropos here today, because I have something to say. And it is that what this case is about, at least insofar as counts 1 and 3 are concerned, is how much water was in that channel, ditch, creek, stream, river. However we want to refer to this, what the significant nexus test and the pluralities test, how much water was in that channel. And if you look at the trial record from the first trial, you can't answer that question. Because there was no flow test, there was no measurement, there was no temperature test, there was no chemical test, there was no biological test. And the so-called expert that testified on all that subject matter admitted that. Admitted that. And then finally we get to the point, well, what did you rely on, Mr. Tillinger? Well, we relied on the OHWM, the Ordinary High Water Mark. And I say, is that important to you? And he says, well, it is. It's basically how we figure it out. Now why is that important to the discussion here this morning? It's important because Justice Kennedy clearly indicates in his opinion the significant nexus test. He disparages that OHWM criterion. And he takes substantial issue with it in a fairly long narrative. And indicates that there are many problems with using that as a presumption of flow. Now sticking with Justice Kennedy and that Rapanos opinion, if the court could please, and I'm sure the court has done that already, carefully review Justice Kennedy's criticism of the plurality. And think about the fact that the flow is the issue here. How much water is in that channel, that 2,500 feet? That Mr. Tillinger can't answer that question. But Justice Kennedy indicates the plurality is wrong because any amount of water, so long as it's a surface water connection between the wetland and some water that gets to a traditionally navigable water, will be appropriate. And the criticism is you could have a very large amount of water. And Justice Kennedy says that can't be right. That can't be right. So just as a basic matter of evidence here, the court please should focus on what was the proof at the first trial on counts one and three. There were separate motions made throughout the course of that entire experience. Jurisdiction motions, Rule 29 motions, sufficiency motions. They were argued and they're exhausted in this record throughout that trial. And they should have been granted under this court's decision in Lewis because there's no way to figure out with any degree of certainty what the law is. And I'm not saying that the law is wrong. I don't know how many times I've read Raponos. I'm a criminal lawyer and this was a very steep learning curve for me. And last night in my hotel room, I read a piece that I hadn't really never seen before. And Justice Kennedy takes issue with the plurality again and he draws in Justice Roberts' concurrence, Chief Justice Roberts' concurrence where the Chief Justice had said in Raponos, you know, it's a shame if they had just instituted new regulations and proposed some reasonable guidance, we wouldn't be in the fix that we're in today. And Justice Kennedy recounts that whole narrative of Chief Justice Roberts and he says, you know, but the problem with that is that the plurality's approach excludes the government regulator's interpretation. It excludes it. So it is in fact a straight up statutory interpretation to the exclusion of anything that the EPA or the court had said about waters of the United States. Wholly apart from other issues that I think are nevertheless important, the court has to think about was the jurisdiction proved on counts one and three at the first trial? Now, I don't want, if I don't have to, get into the question of am I allowed to bring that claim. But I did raise it in the briefs because I thought it was only fair to raise it. It seems to me the way that we briefed this paper, this court has said that that's a segregable claim. The sufficiency gets to come up on the first direct appeal. And here we are on the first direct appeal. Now one last thing I want to talk about before I go into some of the other, I'll call them and I do this I think at my own expense, but it goes to the sufficiency. I want to talk a little bit about how the government improved its case in the second trial. When I crossed Mr. Tillinger, he tells me he didn't do a chemical test, a biological test, he didn't do any temperature test. He says it's important to know the relative frequency of the flow, but it's not important to know the specific amount. And he comes in and says, as long as the thing is flowing for three months typically, which is in the guidance, which was an excluded exhibit, he says we're good to go. It's a relatively permanent water. And you just, you don't have any argument here. There's not one thing in Rapano's plurality or in the significant nexus test that says that three months typically is the duration of flow. It's a completely contrived standard. And this man, Mr. Tillinger, who was a very nice man, testified to that standard. Now, if you fast forward to the end of the trial and the six notes that the jury sent out, one of the questions was, what about this three-month business? And Judge Malloy was in agreement with me that that's not the law. And we really couldn't address the question. So what I'm here to submit is that by its own hand, the government has improved its judgment on this matter. The jury was confused and misunderstood this legislation. They were remiss in enacting regulations. They have guidance that comports with neither the plurality nor the significant nexus test. And in fact, guidance isn't the law in any case. The jury didn't know anything about any of these matters, and they should have known. So now I'll move to the trial proper. Should the guidance manual have been admitted as an exhibit? Respectfully, yes. Judge Malloy was in error on that decision. He wanted me to use it at one point as a learned treatise. But the guidance is just so full of information that is so conflicting, even to the point where it indicates on the cover that it's not binding on individual citizens apparently. So that material should have come in to evidence. Should Mr. Tillinger have been declared an expert witness on this jurisdiction issue? This claim is well exhausted. It was briefed. It was objected to prior to his assuming the witness stand. It was objected to in writing. That's document 58 in the district court record. And nevertheless, Mr. Tillinger was authorized to go before the jury and in the stature of an expert indicate that we got this. That's basically what he tells the jury as the government. We got this. This jurisdictional analysis here is kind of a piece of cake. Here's what we do. We do a desktop assessment. We look at maps that you can buy at any sporting goods store. We look to see what the configuration of the channels is. Now on those maps, I'd ask the court to look at the evidence between the first and second trial. When Mr. Tillinger is crossed at the second trial, he's challenged on the maps that he used. He used maps in the first trial from 1980, 1996. They were old. They were outdated. And he had really no explanation for that. But what was really interesting about that first trial testimony insofar as the maps are concerned is that Mr. Tillinger says this is a solid blue line and that generally indicates a relatively permanent or permanent water. You may want to reserve your remaining time for rebuttal, but I had one quick question for you. And that is there is evidence at trial that he was warned that he might need a permit. Where does that figure into your argument one way or the other? Well, I think that I remember in the sequences is that it's all after the jurisdictional analysis is done. And I guess my response to that question is the jurisdictional analysis was in partnership with the EPA and a criminal investigator. It was a criminal investigation. And there was no participation by the landowner. So I don't think that the notice that he received is meaningful in any way. Okay. Thank you. Good morning. I'm David Gunter from the Department of Justice here for the United States. As we've heard, there's some uncertainty about exactly what standard applies here to waters of the United States. But some of the facts in this case are not disputed. Joseph Robertson used heavy machinery to dump tons of soil into streams and wetlands on property that he did not own. Much of that property was owned by the U.S. Forest Service. And he had previously unsuccessfully sought to get a permit to build a pond on that property and then denied. And he had been warned with respect to this activity by state and federal officials that he needed a permit and he should stop working and talk to the Corps about whether his waters were waters of the United States. So he knew that his activity was illegal and he was properly convicted of a Clean Water Act violation and of willful injury to United States property. Counsel, let me ask you a question. And this relates to the fair notice issue that an appellant raised in briefs but didn't comment on earlier in this argument. My question is, how does a guy like Robertson know, how does he have fair notice that the creek where he's modifying the stream, putting in ponds, putting in fill, how does he know that's a water of the U.S. in terms of ordinary intelligence? And my specific precedential inquiry is, is there any law that says that a Marx analysis, analysis under the Supreme Court's Marx case should point him in the direction of Justice Kennedy's opinion? Yes. There are several parts to your question, Judge Gould, so let me see if I can get to all of them. I think as a factual matter, he clearly had noticed that the waters on his property were also on Forest Service property, so that suffices for count two. And also during the entire time that this case, during his activities and during his trial, there was a clear standard established in this court that established Justice Kennedy's standard as the operative definition of waters of the United States, and that is the Healdsburg at this time. There's also a question of whether he could have told, he could have been aware that the stream, his particular streams were waters of the United States, because they would meet either of the tests. And on that, let me just respond to counsel's argument about the evidence at first trial. Todd Tillinger, the Corps' wetland expert, at the first trial testified that he walked the entire stream, all 2,500 feet of it, in October 2014 to ground truth his maps, and that's at excerpts of record 2724, and that it was continuously flowing, you could see the entire stream and hear it all the way down. So I think that Robertson could have had reasonable notice that his waters were continuously flowing, would satisfy the plurality standard, and were waters of the United States. But then that leads to the question of whether Healdsburg is still good law, and whether he could have gone to the F-3rd and found out that Justice Kennedy's test was the one that was necessary for him to follow, based on the Marks analysis. And my principal argument this morning is that the Court hasn't abrogated the standard that it approved in Healdsburg. There's a high standard for determining when a subsequent case overrules a prior case, such as whether Davis has overruled Healdsburg, and it's only when the decisions are clearly irreconcilable. The basis of Healdsburg is that the government can prove a Clean Water Act jurisdiction under Justice Kennedy's standard, because that standard would command the assent of a majority of justices in almost all cases. So in Healdsburg, this Court was looking directly at the dissents in Rapanos to try and determine whether they would provide a controlling rule of law. I think my question was trying to get at, in terms of fair notice, is there any specific precedent from the Supreme Court, the Ninth Circuit, or some other circuit that says that a person in Robertson's situation has to look at the, not only the language of the statute, but also the language of Healdsburg, let's say. That is, you know, clearly the Supreme Court has said you can look at the words of the statute as authoritatively construed, or something like that, in the linear case. But I'm not aware of any case where they've said that that applies to a marks. It's authoritatively construed in that sense when you get to the standard under a marks analysis. Let me identify some of the ways that Robertson could have known that. I'm not aware of a case that holds directly what you're asking about, whether there is a precedent. But certainly the Clean Water Act itself uses the phrase, waters of the United States, and prohibits discharge into waters of the United States. Then the question is, what does that mean? The Corps and EPA have promulgated regulations to describe what it means. They include tributaries, they include adjacent wetlands, kinds of waters that clearly describe the waters at issue here. What Rapanos did was only to limit the application of those regulations in some cases, where Justice Kennedy and separately the plurality would have found that the Corps and EPA were trying to cover waters that were not waters of the United States. And so then the question is, is there something in the case law, for example, marks, that would have advised Mr. Robertson that his waters were in the, so to speak, Rapanos exceptions rather than covered by the regulations. And our submission is that there's nothing in the court's case law to exclude the waters at issue here from the scope of the Corps' regulations. Rather, Healdsburg, which is what he would have found if he had gone to the books at the time, clearly established Justice Kennedy's standard as an appropriate standard for the government to establish waters of the United States. In fact, in Healdsburg, the court was asking what rule would command the assent of a majority of the justices, and in Rapanos there are two rules that would command the assent of a majority of justices. Eight justices would agree that relatively permanent standing or flowing waters may be covered by the Corps' definition of waters of the United States, and five justices would agree that waters with a significant nexus could be covered. The government at trial concentrated on the second, the significant nexus standard, because that was the instruction that Judge Malloy gave to the jury, appropriately, we believe, under Healdsburg. But if the court decides that the application of Davis and marks to Rapanos is a difficult question here, and it could decide that, our submission is that also the evidence that the government presented at trial would satisfy the plurality test. So would you go back, because he started not by engaging in the whole Marks-Rapanos-Davis analysis, but a fairly simple proposition, and that is to go back to the first trial, and then he used the significant nexus test that basic evidence would not even support it in that first trial. I think that the evidence is ample at the first trial to support a conviction under the significant nexus test, or under the pluralities test, and our brief has a number of those citations, but I would point you again to ER 2724, where Todd Tillinger, the Corps' wetland expert, said, I walked the entire length of this stream, I saw that there was a hydrological connection from the waters at issue in this case, all the way down to Cataract Creek, which flows into the navigable, in fact, Jefferson River. So as to whether that would conclusively establish beyond a reasonable doubt, if in a harmless error analysis, I don't know. But on the first trial, the only question for the Court is sufficiency of the evidence. Could the jury have had a reasonable basis to find that that element of the offense has been satisfied? And the testimony in the record, even if disputed by some of Robertson's witnesses, clearly establishes at least a sufficient basis for the jury to find the element of the offense would have been satisfied, and therefore for the judge to deny the motion for a directed acquittal. But also, like Mr. Donahoe, I would say this Court doesn't need to decide that difficult question that arises from Ressio about whether you can even raise such a motion after a mistrial. Our position is that you can't raise such a motion after a mistrial, and it's supported by a case law from the First Circuit and the Fifth Circuit. If this Court needs to decide that question, I urge you to follow the First Circuit and Fifth Circuit in finding that a mistrial wipes the first trial. But as I said, because the evidence at the first trial was sufficient, the Court can do what it did in Ressio and avoid that question simply by holding that the conviction could be sustained anyway. I appreciate that one question that may arise in this case is whether Rapanos itself, if Healdsburg has been overruled by Davis, if it's no longer still viable, does Rapanos itself provide a controlling rule? And our argument is that it is, for the reason I stated before. Between the dissents and the concurrent — between the dissent and the plurality opinion in Justice Kennedy's concurring opinion, you can find the rule that a majority of justices would support. But in the alternative, I would also say that even if there's no controlling rule that comes out of Rapanos, there is at least a persuasive rule. And in Davis, when the five justices concurring in the Ambach decision said, we don't believe that dissents can be used in a Marx analysis, Judge Christen did write that dissents may be relevant in terms of understanding the context of the case, in terms of understanding the persuasiveness of the arguments. And so those arguments in the dissent may provide a basis for finding that Justice Kennedy's or the plurality's test is a viable basis for establishing waters of the United States, even if this Court concludes that that rule doesn't necessarily have to be controlling. It's also a persuasive rule. It kind of goes back to the basic question of notice. If you can't even figure out which parts of the Venn diagram fit together amongst all these lawyers and judges, how does a regular citizen figure it out? Well, again, I submit that at the time of his activities and at the time of his trial, that standard was clear. This Court had said the government may demonstrate jurisdiction under Justice Kennedy's test. But beyond that, I would also say that this is not the only area of law where there are complicated regulations, nuances based on case law. If you look at Marx itself, it was discussing the obscenity standard that the Supreme Court had considered in memoirs. And the obscenity standard is famously complicated, and the Supreme Court was never able to decide exactly what constituted obscenity under the First Amendment. And yet, the Supreme Court kept upholding some convictions and vacating other convictions on the basis that the standards that it had set out, you know, prurient interest, redeeming social value, et cetera, could be reasonably and responsibly applied by the lower courts. And the same is true here. Between the Court's regulations and this Court's statement in It's the same standard that EPA and the Court have been applying through guidance since Rapanos was decided. And so, if Robertson here had gone to the Court, for instance, and said, can you help me understand whether my waters are waters of the United States, under the Supreme Court's Hawks decision, the Court would have had to do that. And that decision itself would have been reviewable. But what the District Court found is that Robertson didn't care. He had been told over and over, he had previous violations on Forest Service land. He was told over and over with respect to these violations, that they violated the Clean Water Act. And in the District Court's words, he went ahead and did what he wanted to do anyway. So I appreciate the fair notice concern here, but I submit that on the facts of this case, there's no question that Robertson knew what he was doing was illegal, and that the evidence in the record was sufficient to sustain a conviction. So, in terms of him knowing what he did was illegal, that depends on using a Marx type analysis to say Healdsburg controls, right? I think that for— It defines the test clearly? I think that retrospectively, this Court has to do a Marx type analysis to determine whether Healdsburg is still good law. But as a matter of due notice, at the time of his conduct, it was clearly established that Healdsburg—Healdsburg clearly established Justice Kennedy's rule. There was no need for him to do a Marx analysis, because this Court had already done it in controlling case law. And Davis comes after his conduct. Davis comes after his conduct, after his trial. It comes before sentencing. So his judgment wasn't final. It was—it was reasonable and—and natural to raise it. But if this were a case where he was—the government was trying to get an injunction against him to stop him from modifying the stream, I'd have no question that Healdsburg would be applicable. And that, for me, wouldn't be a difficult case. I just have the problem, in a criminal case, as to whether with that sort of convoluted analysis under the Marx theory, and sufficiently complex that—that our Court took it in bank in Davis to have another run at it, whether a citizen is supposed to know that and go to prison if they don't know that. Respectfully, Judge Gould, if you do believe that the Healdsburg decision would still apply in an injunction case, then I think that it's perfectly appropriate to apply it to the conduct here. The reason is that that standard, if it is still viable, has been viable the entire time and is—is in EPA's and the Corps' regulations, is in their guidance, and is in the Healdsburg case. So the only—the only question that Davis might raise and that comes up in the Marx analysis is whether subsequent case law might invalidate Healdsburg and thus invalidate the standard that was used at trial. But if that standard is still viable, it has never changed. It has been in place the entire time. So, to summarize, our view is that the—the Davis and Marx and Rapanos questions in this case are complicated. They're a puzzle, but all of the ways to solve that puzzle point toward the same conclusion, which is that the government can use Justice Kennedy's standard to establish waters of the United States, as it appropriately did at trial here. Every court to—who—to have considered this question has allowed the government to use that standard, and the evidence in the record supports Robertson's conviction under that standard. Thank you. There's a difference between evidence sufficient to go to the jury to let them try and make a decision and sufficient evidence to convict. And when we finally got to the Rule 29C stage, the latter was the question. Was there sufficient evidence to convict? And there wasn't. I'd like to invite the Court to volume 10 of the excerpts at 2741 and 42. And I went through pretty quickly with Mr. Tillinger his—a piece of his jurisdictional analysis. So we're limited to one day, correct, for determining this channel all the way down? Is that right? Correct. Did you determine in May whether it was running all the way down? No. Did you determine any other day? October 2014, when I was out. All right. Did you determine in January of 2014? No. February? No. March? No. April? No. May? No. June? No. July? No. August? No. September? No. November? No. December? No. So you took one day out of 365 and made your jurisdictional determination based on that? Uh-huh. And I was looking for the presence or absence of an OHWM. That's not sufficient proof of jurisdictional nexus here. The other part I would ask the Court to look at in this record from the first trial is my investigator's testimony and his exhibits 500 through 533. I have the pictures here with me, or at least copies of them. And if they're carefully examined, you can see that there are places in this drainage where it's dry and there's no water. So given that conflicting testimony, the verdict in the end under Rule 29C should have been not guilty on Counts 1 and 3. Thank you. I just have one final question. Is your client's expected release date still in December, or do you have an estimate on that? He has, Your Honor, a halfway house placement very soon. Okay. Thank you. Yeah. Thank you.
judges: McKeown, Gould, Rothstein